UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES SHEFFEY, | ) | Case No. 1:14CV1329 |
| | ) | |
| Petitioner, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| MARGARET BRADSHAW, | ) | Report and Recommendation |
| Warden of Richland Correctional Institution, | ) | of Magistrate Judge |
| | ) | |
| Respondent. | ) | |
| | ) | |

On June 2, 2014[1], pro se Petitioner James Sheffey ("Petitioner") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF Dkt. #1. He seeks relief for alleged constitutional violations that occurred in the Cuyahoga County, Ohio Court of Common Pleas during his jury trial and his convictions for four counts of felonious assault in violation of Ohio Revised Code ("ORC") § 2903.11(A)(2) with firearm specifications in violation of ORC § 2941.145; one count of improper discharging of a firearm at or into a habitation in violation of ORC § 2923.161(A)(1) with a firearm specification; criminal damaging in violation of ORC § 2909.06(A)(1), and having weapons while under disability in violation of ORC § 2923.13(A)(3). *Id.*

On November 10, 2014, Respondent Margaret Bradshaw, Warden of Richland Correctional Institution, filed an answer/return of writ. ECF Dkt. #10. On November 21, 2014, Petitioner filed a traverse. ECF Dkt. #11.

For the following reasons, the undersigned recommends that the Court DISMISS the instant petition in its entirety with prejudice:

---

[1]The filing date for a petition from an incarcerated *pro se* petitioner is the date the petition was handed over to the prison mail system, not the date it was received and docketed by the federal habeas court. *Houston v. Lack*, 487 U.S. 266, 270-72, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988).

## I.  **SYNOPSIS OF THE FACTS**

The Eighth District Court of Appeals of Ohio set forth the relevant facts on direct appeal. *State v. Horne*, 2011 WL 1486628 (9th Dist.). These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999):

> In January 2012, Sheffey was indicted on four counts of felonious assault, in violation of R.C. 2903.11(A)(2) (involving four different victims); one count of improperly discharging into habitation, in violation of R.C. 2923.161(A)(1); one count of having weapons under disability, in violation of R.C. 2923.13(A)(3); and one count of criminal damaging, in violation of R.C. 2909.06(A)(1).  The felonious assault and improperly discharging into habitation counts each carried one-and three-year firearm specifications. They further carried a five-year specification for a "drive-by shooting."The underlying allegations giving rise to the indictment were that Sheffey fired several bullets into a residence on 6th Avenue in East Cleveland after having a fight with the owner.
>
> Sheffey pleaded not guilty to the charges, waived his right to a jury trial on the having weapons under disability count, and proceeded to a jury trial on the remaining counts where the following evidence was presented.
>
> Dominique Hearn testified that she used to date and reside with Wilson Clark, the owner of the house located on 6th Avenue in East Cleveland. According to Hearn, on Saturday, July 23, 2011, around 8:00 p.m., she was hanging out on Wilson's front porch of the house on 6th Avenue, along with (1) Wilson, (2) Wilson's aunt, Leigh Clark, (3) Wilson's daughter, Somer, and (4) her own daughter, Jayden, when Sheffey pulled into the driveway, driving a silver Mazda. Hearn explained that she knew Sheffey because he lived down the street on 6th Avenue, and he had dated Leigh.
>
> Hearn further testified that Sheffey wanted Leigh to come down to see him but she was not interested. Wilson relayed the message to Sheffey, who then left. Ten minutes later, Sheffey returned, asking again to talk to Leigh. According to Hearn, Wilson ultimately told Sheffey to leave, resulting in the two "tussling" in the driveway , Wilson "knock[ing]" Sheffey out, and Sheffey falling in the driveway and "bust[ing] his head open." Sheffey got up, "stood there for a minute," got into his car, and "reversed sporadically" from the driveway, driving "out of control."
>
> According to Hearn, less than ten minutes later, Sheffey pulled up again in his car, driving "regular pace until he came to a halt in front of the porch when we saw the gun." Hearn testified that "[y]ou couldn't not see that gun. When we saw that gun we were like oh, my God. We tried to make it in the house. We barely made [it] in the foyer. That's when we heard the shots fired ." Hearn explained that the "we" referred to herself, Leigh, and the two girls. Wilson was not at the house because he had left following the fight with Sheffey.
>
> Hearn further testified that she immediately called Wilson and told him what happened. On cross-examination, Hearn stated that she did not call the police

immediately following the shooting; instead, she called only after she believed that Sheffey came back to burglarize the house later that same evening.

The state next offered the testimony of Wilson, who corroborated much of what Hearn testified to but denied pushing or shoving Sheffey. Wilson testified that he and Sheffey "were going back and forth" and then Wilson's uncle stepped in. Wilson further testified that he then left but got a call about 20 minutes later, indicating that bullets had been fired at the house. Wilson ran back to the house, discovering that the front window was "busted" and there were "holes" in the wall. According to W
ilson, Sheffey's brother, Donald, apologized to Wilson the next day for his brother's actions.

East Cleveland patrolman, Todd Carroscia, testified that he responded to a call concerning several shots fired in the area of 6th Avenue. Officer Carroscia testified that he first cleared the house, finding four individuals upstairs hiding in a closet. He observed bullet holes in the wall and part of the door jamb. One bullet was recovered, along with a piece of slug. Officer Carroscia further recovered a large brick "that appeared to have been thrown through the window." He photographed the area, including a pool of blood found outside the house. Officer Carroscia further took
some swabs of the blood, which was later confirmed to match Sheffey's.

East Cleveland detective, Michael Delisle, testified that he followed up with the investigation of the shooting. He testified that the Clarks' front porch was approximately 15 feet from the street and that one could "see directly onto the porch without obstruction" from the street. Det. Delisle testified that the police did not recover any gun or shell casings on the scene and that the one bullet recovered was "too smashed" to perform any forensics. He further stated that, after he interviewed Wilson and Hearn, he obtained an arrest warrant for Sheffey. Det. Delisle interviewed Sheffey in March 2012, which was videotaped and played at trial for the jury.

In the interview, Sheffey initially indicated that he was unfamiliar with any shooting and that he was in Detroit at the time of the incident. After being told that the police recovered blood from the scene, Sheffey indicated that the blood was his. He ultimately admitted to driving his uncle's car to the Clarks' house and that he had drank heavily. He further stated that after the fight, he went to a friend's house. His friend, however, has since died. He denied any shooting, emphasizing that he did not own a gun.

Donald Cannon, Sheffey's brother, who was treated as a court's witness, testified that he heard a commotion at Wilson's house on the night of July 23, 2011, and then saw his brother lying in the street. According to Cannon, Sheffey was intoxicated that evening and had driven their uncle's gray Mazda over to the Clarks' house. Cannon testified, however, that his brother was not involved in any shooting. Cannon also testified that the next time that he saw his brother was in Detroit, Michigan for a funeral (months later) and that he had told Sheffey that the police were looking to speak with him. According to Cannon, Sheffey indicated that he was coming home to allow the police to question him but then never did.

ECF Dkt. #10-1 at 95-100.

## II.   **PROCEDURAL HISTORY**

### A.   **State Trial Court**

On March 28, 2012, the Cuyahoga County Grand Jury indicted Petitioner on four counts of felonious assault in violation of ORC 2903.11(A)(2) with one and three-year firearm specifications and "drive by shooting" specifications; one count of improperly discharging a firearm into a habitation in violation of ORC § 2923.161(A)(1) with the same gun specifications; one count of having weapons while under disability in violation of R.C. 2923.13(A)(3); and one count of criminal damaging or endangering in violation of ORC § 2909.06(A)(1). ECF Dkt .#10-1 at 1-6. Petitioner entered a plea of not guilty to the charges. *Id.* at 7.

On June 25, 2012, a jury was empaneled and trial was set to begin. ECF Dkt. #10-1 at 8. The transcript of proceedings on that date shows that prior to the commencement of trial, the trial court judge indicated that "considerable" pretrial negotiations had occurred and he requested that the prosecutor put the plea negotiations on the record while he stepped out of the courtroom. *Id.* at 5. The prosecutor indicated that the latest plea offer was for Petitioner to plead guilty to one count of felonious assault with the one and three-year firearm specifications and to having weapons under disability. *Id.* at 6. In turn, the State would dismiss the rest of the counts. *Id.* Petitioner's counsel indicated on the record that he had spoken extensively with Petitioner and it was Petitioner's desire to go to trial. *Id.*

Petitioner did agree to waive the right to jury trial on the having weapons under disability charge after questioning by the trial court. ECF Dkt. #10-2 at 12-13. The trial court then addressed whether Petitioner wanted to enter into the plea agreement. *Id.*

The following day, the jury was impaneled and trial began. ECF Dkt. #10-2 at 174-175. Petitioner, through counsel moved for an acquittal after the State rested its case, but the trial court denied the motion. *Id.* at 134-137. Counsel thereafter renewed the motion for acquittal after the defense rested after calling no witnesses. *Id.* at 141. The trial court denied the motion and issued a journal entry of said denials. ECF Dkt. #10-1 at 9.

On June 28, 2012, the trial court issued a journal entry indicating that the jury found Petitioner guilty on all of the felonious counts with all of the gun specifications, the improper discharging of the firearm into a habitation with all of the firearm specifications, and criminal

damaging.  ECF Dkt. #10-1 at 10.  The entry further indicated that the trial court had found Petitioner guilty of having weapons while under disability.  *Id.*

On July 17, 2012, Petitioner, through counsel, filed a motion for the trial court to merge the counts for which he was convicted at sentencing.  ECF Dkt. #10-1 at 11-19.  The State filed a brief in opposition to the motion.  *Id.* at 24-28.  On August 22, 2012, the trial court issued a journal entry sentencing Petitioner to an aggregate sentence of 14 years in prison, based upon its finding that the 3-year sentences for all of the felonious assault counts were to run concurrently to each other, the discharging a firearm into a habitation merged for sentencing with the felonious assault in count one, the court issued a 24-month concurrent sentence on the weapons under disability conviction, and 5 months concurrent sentence on the criminal damaging conviction, with two 3-year gun specification sentences and one 5-year gun specification running consecutive to the other sentences. *Id.* at 29.  The court also imposed a 3-year period of mandatory postrelease control.  *Id.*

On August 2, 2012, Petitioner filed a motion for new trial.  *Id.* at 20.  Counsel attached a letter from one of the victims in the case, Ms. Clark, who wrote a letter indicating that she, the children, and Ms. Hearn, the only eyewitness who identified Petitioner as the shooter, were not in a position to see anything on that night.  *Id.* at 20-23.

### B.      Direct Appeal

Petitioner, through new counsel, filed an appeal of his conviction to the Eighth District Court of Appeals. ECF Dkt. #10-1 at 31. In his brief, Petitioner set forth the following assignments of error:

> 1. THE TRIAL COURT ERRED WHEN IT REFUSED TO ACCEPT APPELLANT'S ALFORDS[SIC] PLEA.
>
> 2. THE TRIAL COURT ERRED WHEN IT FAILED TO MERGE ALLIED OFFENSES.
>
> 3. THE TRIAL COURT COMMITTED PLAIN ERROR IN RECORDING APPELLANT'S SENTENCE IN ITS JOURNAL ENTRY AS 14 YEARS IMPRISONMENT.
>
> 4. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> 5. INSUFFICIENT EVIDENCE SUPPORTED APPELLANT'S CONVICTIONS.

6.  THE STATE COMMITTED PROSECUTORIAL MISCONDUCT BY ATTACKING THE SINCERITY OF DEFENSE COUNSEL.

ECF Dkt. #10-1 at 40-66.  The State filed a brief as well. *Id.* at 67-92. On June 13, 2013, the Eighth District Court of Appeals affirmed the trial court's judgment.  *Id.* at 93-113.

C.      **Supreme Court of Ohio**

On June 26, 2013, Petitioner pro se filed a notice of appeal in the Ohio Supreme Court.  ECF Dkt. #10-1 at 115.  In his memorandum in support of jurisdiction, Petitioner asserted the following propositions of law:

1.      Appellant was denied his constitutional right to due process when the trial court erred in refusing to accept Appellant's Alfords[sic] plea.

2.      Appellant was denied his constitutional right to due process when the trial court erred in failing to merge allied offenses of similar import.

3.      Appellant was denied his constitutional right to due process when the trial court committed plain error in recording Appellant's sentence in its journal entry as fourteen years imprisonment.

4.      Appellant was denied his constitutional right to due process as Appellant's convictions was[sic] against the manifest weight of the evidence.

5.      Appellant was denied his constitutional right to due process as Appellant's convictions are not supported by sufficient evidence as a matter of law.

6.      Appellant was denied his constitutional right to due process as a result of prosecutorial misconduct when state attorney attacked the sincerity of defense counsel.

ECF Dkt. #10-1 at 117-148.  Petitioner then filed a motion in the Ohio Supreme Court for stay and abeyance of a ruling on his appeal until the Eighth District Court of Appeals ruled on his application for the reopening of his direct appeal.  *Id.* at 150-153.  On November 6, 2013, the Ohio Supreme Court declined to accept jurisdiction of Petitioner's appeal and denied as moot his motion for stay and abeyance.  *Id.* at 153.

D.      **Application to Reopen pursuant to Rule 26(B)**

-6-

On September 9, 2013, Petitioner pro se filed a motion for extension of time in the Eighth District Court of Appeals in which to file his Rule 26(B) application so that he could properly research and prepare said application. ECF Dkt. #10-1 at 154. On September 12, 2013, the Ohio appellate court denied the motion for extension, explaining that Rule 26(B) does not provide for an "extension of time" in which to file such an application, but requires an applicant to establish "good cause" for untimely filing an application reopening. *Id*. at 157.

On September 11, 2013, Petitioner pro se filed an application to reopen his direct appeal pursuant to Rule 26(B). ECF Dkt. #10-1 at 158-172. The State filed a brief in opposition to the Rule 26(B) application. *Id.* at 173-181. On January 17, 2014, the Ohio appellate court denied Petitioner's application. *Id*. at 182-191.

### III.  28 U.S.C. § 2254 PETITION

Petitioner filed the instant *pro se* petition on June 2, 2014 and the Clerk filed the petition with the Court on June 19, 2014. ECF Dkt. #1. Petitioner presents the following grounds for relief:

> GROUND ONE: The trial court erred when it refused to accept Appellant's Alford Pleas. In violation of my 14th Amendment.

> Supporting facts: Appellant tried to enter an Alford plea, but the trial judge said he will not accept any plea where a person says they are innocent, and wont[sic] accept they did anything wrong. He told me to plead guilty or no contest, or go to trial.

> GROUND TWO: The trial court erred when it failed to merge allied offenses.

> Supporting Facts: Appellant was charged with 4 counts of felonious assault with firearm specifications, which should have all been ran together, and not separate firearms for the same act and conduct. All 4 counts of Felonious assault where[sic] ran[sic] concurrently, and the firearm specifications should have ran concurrently as well. This is a violation of my 14th Amendment right.

> GROUND THREE: The trial court committed plain erred[sic] in recording Appellant's sentence in its journal entry as 14 years imprisonment.

> GROUND FOUR: Appellant's conviction was against the manifest weight of the evidence.

> GROUND FIVE: Insufficient evidence supported Appellant's convictions.

> GROUND SIX: The State committed prosecutorial misconduct by attacking the sincerity of defense counsel.

-7-

ECF Dkt. #1; ECF Dkt. #1-1.  Petitioner filed a brief in addition to his federal habeas corpus petition.  ECF Dkt. #1-1.

On November 10, 2014, Respondent filed her answer/return of writ.  ECF Dkt. #10.  On November 21, 2014, Petitioner pros se filed a traverse.  ECF Dkt. #11.

## IV.  **PROCEDURAL BARRIERS TO REVIEW**

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).  However, the Supreme Court has also held that it would be in the interests of the parties and the courts for the merits of a petition to be addressed forthwith if it is clear that the applicant does not even raise a colorable federal claim. *Granberry v. Greer*, 481 U.S. 129, 135 (1987); *Prather v. Rees*, 822 F.2d 1418, 1421-22 (6th Cir. 1987) (lack of exhaustion was properly excused where petition was plainly meritless, the state had not addressed exhaustion, and disposition of the case would not offend federal-state comity).

### A.  **Statute of Limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. §2244(d)(1).  The AEDPA statute of limitations is not at issue in this case.

### B.  **Exhaustion of State Remedies**

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus.  28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court."  *Wong*

*v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated.  *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims.  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted).  In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id.* at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32  (6th Cir. 2009).  The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963).  A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is

actually innocent of the crime for which he was convicted.  *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C.  Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds."  *Coleman* at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004), citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary.  *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted.  *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).  Under the *Maupin* test, a reviewing court must decide:

(1)     whether the petitioner failed to comply with an applicable state procedural rule;

(2)     whether the state courts actually enforced the state procedural sanction;

(3)     whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and

(4)     if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule.  *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and

-10-

regularly followed" cannot serve  to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006).  The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision.  *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 751.  "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985).  If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice.  *Smith v. Murray*, 477 U.S. 527 (1986).

> Simply stated, a federal court may review federal claims that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (*i.e.*, exhausted) or because they were not properly

presented to the state courts (*i.e.*, were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004).  A petitioner who is unable to show cause and prejudice may obtain habeas review only if denying such review would produce a fundamental miscarriage of justice, such as when new evidence suggests actual innocence. *Dretke v. Haley*, 541 U.S. 386, 393, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004).

## V.    STANDARD OF REVIEW

The undersigned recommends that the Court find that the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 well after the act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).  Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for a writ of habeas corpus.  The AEDPA provides:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

-12-

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Further, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

A.  Decisions of lower federal courts may not be considered.

B.  Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C.  The state court decision may be overturned only if:

1.  It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

2.  the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

3.  'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

4.  the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.  Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  'An unreasonable application of federal law is different

-13-

from an incorrect or erroneous application of federal law.'

> E.      Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993). The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The United States Supreme Court has observed:

> Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 786-787 (2011).

-14-

## VI.  <u>LAW AND ANALYSIS</u>

### A.  <u>Ground One - *Alford* Plea</u>

In this ground for relief, Petitioner asserts that the trial court abused its discretion in refusing to accept his plea pursuant to *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, (1969) ("*Alford* plea").  ECF Dkt. #31 at 5; ECF Dkt. #1-1 at 10-14.  Respondent contends that the Ohio appellate court rendered a decision that was not contrary to or an unreasonable application of clearly established United States Supreme Court precedent and was not based upon an unreasonable determination of the facts.  ECF Dkt. #10 at 18-20.  Respondent emphasizes that the record of the trial court proceedings did not show that Petitioner presented an *Alford* plea and even if he did present such a plea, the United States Supreme Court's decision in *Alford* holds that defendants do not have an absolute right under the Constitution to have their guilty pleas accepted by the trial court.  *Id*. at 20, citing *Alford*, 400 U.S. 25.

The following conversation was had between the trial court and Petitioner concerning a possible plea agreement:

| | |
|---|---|
| THE DEFENDANT: | I was just - - I just - - They couldn't give me one day to just think, just to have - - |
| THE COURT: | Well, this has been going on a while.  This offer has been out how long? |
| MR. SEEWALD: | At least a few weeks. |
| THE COURT: | This is well past the time when you have to make your decision. |
| THE DEFENDANT: | Right. |
| THE COURT: | All right.  Well past the time.  And that's why, you know, I have a restriction unless you plead in a trial you plead to the indictment, and we're at the day of trial and usually I would take only a plea to the indictment but under these circumstances I understand there's been a lot of hard work going on here and things.  I would entertain a plea, but, you know, it needs to be, you know, this is the time to decide.  This is the time to decide because once we start - - |
| THE DEFENDANT: | I understand that.  Wow.  So I couldn't have one day, just until the morning? |
| THE COURT: | No.  You've had all day today.  We've had all the time up until now. |

-15-

THE DEFENDANT: If I go all the way, you said I'll get something like 40 years?

MR. SEEWALD: No.

THE COURT: If you plead, the maximum time I could give you is three years on the firearm specification, plus felonious assault, and I don't know what your record is, that's the maximum, I don't know I would give you the maximum. I would give you the three years, but I don't know about the other part. So you're looking at anywhere from 5 years up to 11 years. All right. But understand if you had that five years after you run your three years, there's a possibility of judicial release after you serve six months of the rest of the sentence, depending on your performance in prison and your prior record and stuff like that. You know, you may be eligible for judicial release. If you go to trial, you're not going to be eligible for judicial release for at least eight years until those two maximum sentences are - - those two mandatory gun sentences are served.

MR. MARTIN: If there was a conviction, of course.

THE COURT: If there was a conviction. If he pleads. We're talking about if he pleads.

MR. MARTIN: I mean to say I think you said if you go to trial there would be no judicial release after eight years, only upon conviction.

THE COURT: I mean if he's convicted. Mr. Sheffey, unfortunately, you're in a position where you have a tough decision to make. One of the choices isn't going to Disney World here.

THE DEFENDANT: I understand that. I just need a day. Right now, dang, I don't know, man.

THE COURT: I understand that, but this is something you've been looking at for a long time. This plea offer's been up for a period of time. I really don't get involved in this.

THE DEFENDANT: Right.

THE COURT: It's not my job. It's between the State and you, but I want to make sure you understand that, you know, pretrial plea here limits what I can do. If you go to trial, it's a different number if you're convicted, I'm not threatening you, how your sentence will run like that.

THE DEFENDANT: But I am.

THE COURT: Not necessarily. It depends how it shakes out what the decisions are and the law as to each of these counts. You know, let's ask this question right now, would there be a merger? Are these allied offenses?

-16-

MR. MARTIN: I can't say with any certainty, Your Honor. I wouldn't be willing to concede that point as to the - - at least as to the discharge into the habitation and the felonious assault.

THE COURT: There are cases that say if you shoot a gun, several bullets, at a crowd of people that could be several offense, not just one, but, you know, if there's six people standing in a crowd, that could be six offenses.

MR. SEEWALD: Judge, I did a little bit of research on that firing the gun out of the car case. Apparently, that does not merge. Merge means you don't have to worry about it, the bottom line. It does not merge with the felonious assaults. I would certainly argue if things went badly at trial that there was a merger. I can tell you from my research on this one point there is no merger. So if you were convicted of felonious and you were convicted of the discharged the firearm, those do not merge, those are separate crimes.

THE COURT: They don't merge?

MR. SEEWALD: I don't want to make an opinion on that.

THE COURT: I don't think they merge. So you could be looking at, you know, substantial difference in available penalties to the Court. All right. Now, some people think that I'm fair. Some people think that I'm stupid. Whatever. But you need to, you know, make a decision. This is a decision that needs to be made, and, you know, waiting another day is not going to change the factors here.

THE DEFENDANT: I understand that. I just need time personally to think, you know what I'm saying, to figure this, you know, to talk and figure it out. I just need one day - -

THE COURT: All I can say is that - -

THE DEFENDANT: - - just to see.

THE COURT: - - when the State offered you a plea of one felony of the second degree, that's a substantial reduction from the five that you're facing.

THE DEFENDANT: Right.

THE COURT: You're facing five felonies of the second degree. They're offering you to plead to one felony of the second degree. That's a substantial reduction. That's a substantial reduction as to what could possibly happen.

THE DEFENDANT: I understand that, but I'm trying to think - - You don't understand what I'm saying. I'm talking about the gun thing. I ain't got a gun. I'm trying to plead. That's what I'm trying to figure out. I don't understand - -

-17-

THE COURT:            Well, you understand - -

THE DEFENDANT: - - how they got six - -

THE COURT:            - - your attorney's been given discovery from the State.  He knows what the statements of the witnesses are and everything like that.  He shared those with you.

THE DEFENDANT: Right.  I looked at them.

THE COURT;            And it will be up to the jury to decide.  And they could go one way or they could go another way.  They could convict you of all five, they could convict you of none, but based upon your attorney's experience, I think he's recommending that this is a good offer to resolve this matter.  And again, his - - you know, Mr. Seewald has been in the business longer than I have, and I've been in it for 35 years.  You know, it's something based upon his experience, you know.  He's advising you.  His advice should not be discarded lightly.

THE DEFENDANT: I understand.  It's got to be now or never, hum?  If I don't make a statement, what is that?

MR. SEEWALD:      If you don't accept the plea, we go to trial.

THE COURT:            Nobody else can give you any more explanation.

THE DEFENDANT: You broke it down.  I'm just asking for a day.  I mean - -

THE COURT:            I'm not giving the day.

THE DEFENDANT: Hum?

THE COURT:            We've had this, you know, we've been talking about this.  I know your attorney's been talking about it all day as you've done in the past.  You've had pretrials about this.  You know, and it's time to make a decision.  It's time.

THE DEFENDANT: You said court three days.

MR. SEEWALD:      I said the trial would maximum take three days, two days possibly.

THE DEFENDANT: That's a lot of years.  I'll do five.

THE COURT:            Pardon me?

THE DEFENDANT: I'll do five.  I'm not doing more than that.

THE COURT:            There is no agreement as to what the penalty is.  I decide that.  The minimum is five.  The maximum on this plea is 11.  That's the range.  That's the range.  I can say, you know, my understanding is your record's not real bad.  You have some drug offenses and a couple breaking and enterings, but no crimes of violence.

-18-

THE DEFENDANT: I never broke and enter anything.

THE COURT: I don't see any crimes of violence, so I can't tell you what a sentence would be.  It's between 3 and 11 - - 5 and 11.  I'm sorry.

THE DEFENDANT: Hum?

THE COURT: It would be between 5 and 11.

THE DEFENDANT: 5 and 11?

THE COURT: 5 and 11.

MR. SEEWALD: She gets down to three because you can apply for judicial release.  You can apply for judicial release after six months after the three.

THE DEFENDANT: I know I might not get it.  Man.

THE COURT: Hum?

THE DEFENDANT: This is a tough thing to do, man. You know what I'm saying? You're talking about 5 to 11. That's a lot of years. That's life over with.

THE COURT: You find yourself in a position no matter what decision you make is a difficult decision. And the question is, you know, which of the difficult decisions will benefit your position the most in your opinion.  You know, there's risk of going to trial and getting found guilty of five felonies of the second degree. You could be found not guilty of all.  I would like a decision in the next couple of minutes before 4:00. Once we start with the jury, we're going to try the case.

THE DEFENDANT: Right.

THE COURT: What do you want to do?

THE DEFENDANT: You say once it's gone I can't plead no more?

THE COURT: You can plead to the indictment.

THE DEFENDANT: I plead to the whole thing? Wow. That's crazy.

THE COURT: Hum?

THE DEFENDANT: I said wow, that's crazy.  I'll take the plea, man.

THE COURT: You're going to do the plea?

THE DEFENDANT: I'll do it.

THE COURT: All right.  Bring him up.

-19-

| | |
|---|---|
| THE BAILIFF: | Step up to the podium. |
| THE DEFENDANT: | You say it's the right thing to do? |
| MR. SEEWALD: | You have to cut your losses. |
| THE DEFENDANT: | I'm about to do 11 years. It is going against what I feel. |
| THE COURT: | We're here in the case of State of Ohio vs. James Sheffey. This is Case No. 560852. We're here on a seven-count indictment. Counts 1, 2, 3, 4 and 5 are all felonious assault charges, each in violation of Revised Code Section 2903.11. Each has a different victim as to this conduct, discharge, and each carries a one-, three-, and five-year firearm specification.  Count 5 is improperly discharging a firearm into a habitation, in violation of Revised Code Section 2923.161. That's a felony of the second degree. That also carries a one-, three-, and five-year firearm specification. Count 6 is having a weapon under a disability. It's a felony of the third degree, low tier. That's in violation of Revised Code Section 2923.13.  Count 7 is criminal damaging or endangering, in violation of Revised Code Section 2909.06. That's a misdemeanor of the first degree.  Since all these acts allegedly occurred on or after July 1, 1996, the applicable laws of the Criminal Code of the State of Ohio as modified by Senate Bill 2 and its subsequent amendments.  Present from the beginning of the hearing has been the Defendant Mr. Sheffey and his counsel Mr. Seewald. Representing the interest of the State of Ohio is Assistant County Prosecutor Max Martin.  Mr. Martin? |
| MR. MARTIN: | Thank you, Your Honor. It is my understanding that Mr. Sheffey wishes to enter a change of plea. As I previously stated, this comes after having fully pretried the matter with Mr. Seewald and having provided full discovery to him. Your Honor, it's my understanding that if Count 1 of this seven-count indictment is amended to delete the five-year drive-by firearm specification, Mr. Sheffey would withdraw his plea of not guilty and enter a plea of guilty to that amendment. The one- and three-year firearm specification would remain attached to that count.  My understanding is he would plead to Count 6, felony three having weapons under disability, Your Honor. That would be the entirety of the plea. If it is forthcoming, I would ask leave of court to nolle Counts 2, 3, 4, 5 and 7. |
| THE COURT: | You amend Count 1 to include all the other victims? |
| MR. MARTIN: | Yes. If you would allow it, I would ask to amend Count 1 to include victims Dominique Hearn, H-e-a-r-n, Somer Samuel, S-o-m-e-r, Samuel common spelling, Jayden, J-a-y-d-e-n,Richardson. It would have no affect,of course, on the penalties. Just for the language of the indictment. No threats or promises have been made to induce the plea. |

| | |
|---|---|
| THE COURT: | And full discovery rendered? |
| MR. MARTIN: | Yes, Your Honor. |
| THE COURT: | Thank you.  Mr. Seewald? |
| MR. SEEWALD: | Your Honor, I have received full discovery. I've discussed this matter at length with my client. He's been given copies of discovery so he could make his own evaluation. I've gone over his rights with him. If I could address the Court subsequent to the Court's remarks, I would appreciate it. |
| THE COURT: | All right. Thank you.  Mr. Sheffey, could you state your name and age? |
| THE DEFENDANT: | James Sheffey, 49. |
| THE COURT: | And what's the highest level of education you obtained? |
| THE DEFENDANT: | 12th grade. |
| THE COURT: | Do you have the ability to read and write? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Are you currently [sic] any the influence of any drugs or alcohol or medication that would adversely affect your ability to understand what is happening or to enter into a plea? |
| THE DEFENDANT: | No, sir. |
| THE COURT: | Do you, in fact, understand what is happening today? |
| THE DEFENDANT: | Yeah. |
| THE COURT: | Have any threats or promises been made to you to induce you to change your plea? |
| THE DEFENDANT: | I don't want to do it, man. I can't, man. I don't know, man, because this man -- |
| THE COURT: | All right. |
| THE DEFENDANT: | I don't know, man.  I can't do it. That's 11 years. I can't do that. |
| THE COURT: | Bring the jury in. |
| THE DEFENDANT: | Could I talk to you for a minute, Your Honor? |
| THE COURT: | No.  We're done.  Starting trial. |

ECF Dkt. #10-2 at 19-33.  The trial court proceeded to seat a jury.  *Id.*

After dismissing the prospective jury for the day, Petitioner's counsel indicated that

Petitioner had reconsidered the plea offer and wished to plead guilty.  ECF Dkt. #10-2 at 51.  The

following discussion was had on the record:

> MR. SEEWALD:     My client has indicated to me he has rethought the offer of the
> State, and if the Court is in a position to accept such a plea and Mr. Martin is in such a position of the plea, I'd like to go forward.
>
> THE COURT:     Let me say this before we start: If you don't go through with the plea at this point I'm not going to entertain any more offers or anything like that. So I take it as a rejection of the plea and just complete the trial. Do you understand?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT:     All right. We're not going to go back and forth on it. It's time to make a decision. You know, I would prefer to start from the beginning.
>
> MR. SEEWALD:     I would, too.
>
> THE COURT:     All right. We're here now with Mr. Sheffey. Mr. Sheffey during the impaneling of the jury has indicated he would wish to accept the plea offer from the State at this point. Again, this is Case No. 560852, and this is a seven-count indictment. Counts 1, 2, 3 and 4 are all felonious assault charges each in violation of Revised Code Section 2903.11. Each has a one-, three-, and five-year firearm specification. The only difference between each of the first four counts are different victims.
> The victim in Count 1 is Lee Clark, and in Count 2 it's Dominique Hearn, in Count 3 is Somer Samuel, in Count 4 it's Jayden Richardson. Count 5 is improperly discharging a firearm into a habitation. That's also a felony of the second degree, in violation of Revised Code Section 2923.161. It also has one-, three- and five-year firearm specifications. Count 6 is having a weapon under a disability. That's in violation of Revised Code Section 2923.13. That's a felony of the third degree lower tier. And, finally, Count 7 is criminal damaging or endangering, in violation of Revised Code Section 2909.06. Since all these acts allegedly occurred on or after January 1, 1996, applicable laws of the State of Ohio as modified by Senate Bill 2 and its subsequent amendments. Present is Mr. Sheffey and his counsel Mr. Gary Seewald. Representing the State of Ohio is Assistant County Prosecutor Mr. Maxwell Martin. Mr. Martin.
>
> MR. MARTIN:     Thank you, Your Honor. Your Honor, it's my understanding at this point in time Mr. Sheffey wishes to enter a change of plea. This comes after having fully pretried the matter with Mr. Seewald. I provided a full discovery to him, and we had

-22-

several conversations leading up to trial. Your Honor, it's my understanding if Count 1 is amended to delete the five-year firearm specification and add three victims' names leaving a Count 1 -- Count 1, felonious assault, felony two, with a one- and three-year firearm specification which will merge. My understanding is if that arraignment is made Mr. Sheffey will withdraw his previously entered plea of not guilty and enter a plea of guilty to that count as amended. It's also my understanding he'll plead guilty to Count 6 as indicted, as you stated, that's a felony three, having weapon under disability count. If those two pleas are forthcoming, I will ask leave of court to nolle Counts 2, 3, 4, 5 and 7 in their entirety. Other than what's been placed on the record before you, no threats or promises have been made to induce this plea.

THE COURT:                 Count 3 is lower tier?

MR. MARTIN:               That is correct, Your Honor. Count 6.

THE COURT:                 I'm sorry. Count 6, felony of the third degree, lower tier.

MR. MARTIN:               Correct.

THE COURT:                 Thank you.  Mr. Seewald.

MR. SEEWALD:           Your Honor, I have given my client his rights on numerous occasions. I've been given complete discovery. My client has been given the discovery. I would ask to be heard subsequent to the Court's remarks.

THE COURT:                 During your discussions with Mr. Sheffey has he understood the discovery, the nature of it, and have you talked about possible defenses?

MR. SEEWALD:           Yes. He's been very good about that. Yes. He's perfectly competent, reviewed all the evidence, and he understands it perfectly.

THE COURT:                 Mr. Sheffey, could you state your name and age, please.

THE DEFENDANT: James Sheffey.

THE COURT:                 Your highest level of education?

THE DEFENDANT: 12th.

THE COURT:                 Do you have the ability to read and write?

THE DEFENDANT: Yes.

THE COURT:                 Are you currently under the influence of any drugs or alcohol or medication that would adversely affect your ability to understand what is happening or to enter into a plea?

THE DEFENDANT: No.

| | |
|---|---|
| THE COURT: | Do you, in fact, understand what is happening today? |
| THE DEFENDANT: | Yeah. I mean, kind of, yeah. |
| THE COURT: | What do you mean by kind of? Either you do or you don't. |
| MR. SEEWALD: | Don't look at me. |
| THE DEFENDANT: | I don't fully understand it. |
| THE COURT: | If you do not fully understand it, I'm not going to go forward with it. |
| THE DEFENDANT: | You ain't getting what I say. You understand that's what I was trying to tell him before. With the one that you said nolled whatever you call it when I signed the paper. |
| THE COURT: | The waiver of the jury trial. |
| THE DEFENDANT: | So that ain't there no more, either, right? |
| THE COURT: | I'm going to go through what the guilty plea means. If you plead guilty you give up your right to a trial, either a bench or jury trial. You're giving up your right to a trial completely. |
| THE DEFENDANT: | Right. |
| THE COURT: | You're admitting to the truth of the facts in the indictment. |
| MR. SEEWALD: | Contained in Counts 1 and 6. |
| THE DEFENDANT: | 1 and 6? |
| MR. SEEWALD: | That's one felonious assault and one -- |
| THE COURT: | Firing or discharging into a house. |
| MR. SEEWALD: | No. Weapon under disability. The Count 1, the felonious assault, they will drop the five-year gun specification. You will plead out to a three-year gun specification based on those numbers. You will end up with mandatory three years in jail plus the minimum for felonious assault is two years. It can go as high on the felonious assault as eight years if the judge were to decide that he would give you a total on that charge of 11 years. That is the maximum. It doesn't mean he's going to give it to you, and I cannot speak on behalf of the judge. |
| THE COURT: | We also have the having weapon under disability charge is 9 months up to 36 months. |
| MR. SEEWALD: | Which is an additional potential penalty of 9 to 36 months. The other charges, three felonious assaults, shooting a weapon from a car into a habitation, and the misdemeanor are being dismissed which means you cannot possibly- -  We've explained this. |

-24-

THE DEFENDANT:  Five times.

MR. SEEWALD:  Way more. You're limiting your potential penalty by only pleading to two of seven potential charges. Thank you.

THE COURT:  Do you understand what's happening today?

THE DEFENDANT:  I got to plead?

THE COURT:  Do you understand that you're pleading, you're changing your plea, that you're pleading guilty to these two charges with a range of penalties that we discussed. Do you understand that?

THE DEFENDANT:  Yeah.

THE COURT:  Is that a yes?

THE DEFENDANT:  Yes.

THE COURT:  All right. Have any threats or promises been made to you to induce you to change your plea?

THE DEFENDANT:  No.

THE COURT:  Are you satisfied with the services of your lawyer Mr. Seewald?

THE DEFENDANT:  Yeah.

THE COURT:  Are you currently on any Community Control Sanctions, probation or parole?

THE DEFENDANT:  I'm on probation with you.

THE COURT:  All right. You may face additional penalties in that other case including prison time which may run consecutive to any time you might receive in this case. Do you understand that?

THE DEFENDANT:  With the other one going to go with this one?

THE COURT:  You can receive prison time on your other case which could be consecutive to any time you receive here.

MR. SEEWALD:  The old case.

THE DEFENDANT:  Add on this one?

MR. SEEWALD:  It could. They don't have to do anything. The judge has its discretion on how to sentence you.

THE DEFENDANT:  Right.

THE COURT:  You understand?

THE DEFENDANT:  Yeah.

-25-

| | |
|---|---|
| THE COURT: | Are you a citizen of the United States? |
| THE DEFENDANT: | Yes. |
| THE COURT: | All right.  Mr. Sheffey, even though your lawyer has already explained your rights to you, I have to be satisfied that you understand your rights. Do you understand you are presumed innocent and by entering a plea of guilty to these amended charges; the amended indictment, you admit to the truth of the facts and your full guilt therein? |
| MR. SEEWALD: | Say yes, say no, whatever. Just do it. |
| THE COURT: | That's the effect of the plea to these charges. · Do you understand it? |
| THE DEFENDANT: | I mean - - |
| MR. SEEWALD: | Do you understand what it means to plead guilty? |
| THE DEFENDANT: | Yeah, I understand, but I'm not guilty. |
| THE COURT: | Then that's it. |
| MR. SEEWALD: | See you tomorrow morning, Judge. |
| THE COURT: | See you tomorrow. No opportunity to change your plea in the future. |
| THE DEFENDANT: | I said yeah, but I ain't guilty. |
| THE DEPUTY [?]: | You said yeah, but I ain't guilty. You are going to trial. That's what you said. You said no, I'm not guilty.  That's it. You're going to trial. |

ECF Dkt. #10-2 at 51-61.

The Ohio appellate court addressed this issue, finding first that, under *Alford*, a defendant does not have an absolute right under the United States Constitution to have a court accept his guilty plea.  ECF Dkt. #10-1 at 100-101, citing *Alford*, 400 U.S. at 37-38.  The appellate court indicated that an appellate court cannot reverse a trial court's rejection of a plea agreement unless an abuse of discretion is found.  ECF Dkt. #10-1 at 101, citing *State v. Switzer*, No. 93533, 2010-Ohio-2473 (Ohio App. 8 Dist. 2010).  The appellate court further found that under Ohio law, a trial court abuses its discretion in rejecting a plea agreement when it relies upon a blanket policy of refusing *Alford* pleas rather than considering the specific circumstances of each case.  ECF Dkt. #10-1 at 101 (citations omitted).

-26-

The Eighth District Court of Appeals first held that no evidence in the record showed that the trial court in Petitioner's case had a blanket policy of refusing *Alford* pleas.  ECF Dkt. #10-1 at 102.  The appellate court noted that the record showed that the trial court in fact engaged in a plea colloquy twice with Petitioner after Petitioner indicated that he wished to plead guilty, but then Petitioner changed his mind.  *Id*.  The Ohio appellate court further found that the record of the trial court proceedings also negated a finding that Petitioner wished to complete an *Alford* plea as the first plea colloquy stopped after near completion when Petitioner indicated that "I can't do it.  That's 11 years.  I can't do that."  *Id*. at 102, quoting ECF Dkt. #10-2 at 33.  The trial court then engaged in a second plea colloquy after Petitioner again indicated that he wished to plead guilty but near completion of the plea colloquy, when Petitioner's counsel asked him on the record whether he understood what it meant to plead guilty, he responded, "Yeah, I understand, but I'm not guilty."  ECF Dkt. #10-2 at 60.  The trial court judge then ended the plea colloquy and told the parties that he would see them in the morning to begin trial.  *Id*. at 60-61.

In light of the record showing that Petitioner was given two opportunities in court and had been negotiating a plea agreement for weeks before trial was to begin, the undersigned recommends that the Court find that the trial court did not have a policy of refusing pleas and the Ohio appellate court's decision was therefore not contrary to or an unreasonable application of United States Supreme Court precedent or an unreasonable application of the facts when it found that the trial court did not abuse its discretion in not accepting Petitioner's plea and in finding that Petitioner changed his mind about pleading and was wasting the court's time.

### B.  <u>Grounds 2, 3, and 4 - Noncognizability</u>

Respondent asserts that Petitioner's second, third and fourth ground for relief are not cognizable in federal habeas corpus because none of those grounds for relief present federal constitutional issues.  ECF Dkt. #10 at 11-14, 21-27.  The undersigned recommends that the Court find that these grounds for relief are indeed noncognizable in federal habeas corpus review.

Petitioner's second ground for relief alleges trial court error in failing to merge allied offenses as to the firearm specifications.  ECF Dkt. #1 at 7.  In his brief in support of his federal habeas corpus petition as to this ground for relief, Petitioner cites solely to Ohio law except for one

federal case involving plain error.  ECF Dkt. #1-1 at 15-16.  Petitioner concludes that the trial court "failed to properly apply Ohio's allied offenses statute to all firearm specifications."  ECF Dkt. #1-1 at 15.  The undersigned recommends that the Court find that Petitioner's ground for relief is not cognizable before this Court in a federal habeas corpus action.  "'A challenge to a state court's interpretation and application of Ohio's sentencing laws is not cognizable in a federal habeas corpus action.'"  *Ragland v. Tibbals*, No. 5:12CV2526, 2015 WL 3454882, (N.D. Ohio May 29, 2015), quoting *Garrett v. Miller*, 2012 WL 3989022, *3–4 (N.D.Ohio Aug.13, 2012), *report and recommendation adopted*, 2012 WL 3989004 (N.D.Ohio Sept.11, 2012)(citing *Howard v. White*, 2003 WL 22146139, at *2 (6th Cir.Sept.16, 2003); *Kipen v. Renico*, 2003 WL 21130033 (6th Cir. May 14, 2003); *Terry v. Trippett*, 62 F.3d 1418, 1995 WL 469424, at *1 (6th Cir.1995) (TABLE, text in WESTLAW) (citing *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir.1988) (per curiam)).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Ragland,* 2015 WL 3454882, at *12, quoting *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).  Since Petitioner fails to allege a violation of federal law, the United States Constitution or a federal treaty, the undersigned recommends that the Court find that Petitioner's second ground for relief is not cognizable before this Court.

In *Ragland,* a federal habeas corpus petitioner claimed that the state trial court erred when it failed to merge sentences on what he believed to be allied offenses of similar import.  The *Ragland* Court acknowledged that while the Double Jeopardy Clause of the Fifth  and Fourteenth Amendments of the United States Constitution protects a defendant from multiple punishments for the same offense, and while most federal habeas corpus claims are based entirely on review under federal constitutional law, "a claim under the Double Jeopardy Clause requires analysis of state law; because the state legislature has the authority to define and punish crimes, the definition of multiple punishments is dependent on the legislative intent of the state government." *Ragland,* 2015 WL 3454882, at *14, quoting *Person*, 527 Fed. Appx. at 423 (citing *Volpe v. Trim* 708 F.3d 688, 697 (6th Cir. 2013).  The *Ragland* Court further noted that "'[w]hen assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes.'" *Ragland*, 2015 WL 3454882, at *14, quoting *Volpe,* 708 F.3d at 697 (quoting *Banner v. Davis*, 886 F.2d 777, 780

(6th Cir.1989). "Thus, for purposes of double jeopardy analysis, once a state court has determined that the state legislature intended cumulative punishments, a federal court must defer to that determination." *Id*. (citing *Banner*, 886 F.2d at 780).

In Ohio, the courts apply Ohio Revised Code § 2941.25 in order to determine whether the legislature intended to authorize cumulative punishments. *Volpe*, 708 F.3d at 697.  In the instant case, the Eighth District Ohio Court of Appeals quoted ORC § 2941.25 which discusses allied offenses of similar import, but found that the statute did not apply to firearm specifications because firearm specifications "are penalty enhancements and not criminal offenses."  ECF Dkt. #10-1 at 103, quoting *State v. Ford*, 128 Ohio St.3d 398, 2011-Ohio-765, 945 N.E.2d 498, paragraph one of the syllabus. The appellate court found that firearm specifications may be subject to merger under ORC 2929.14 and it quoted ORC §2929.14(B)(1)(b) which prohibits courts from imposing sentence on multiple firearm specifications for "felonies committed as part of the same act or transaction." ECF Dkt. #10-1 at 104, quoting ORC §2929.14(B)(1)(b).  The appellate court noted, however, that this part of the statute prohibiting sentence on multiple firearm specifications applied only to the extent that another part of that statute, section 2929.14(B)(1)(g) did not apply.  ECF Dkt. #10-1 at 104.  Section 2929.14(B)(1)(g) provides:

> If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are   ...felonious assault... and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term, specified under that division for any or all of the remaining specifications.

ORC § 2929.14(B)(1)(g).  Applying this part of the statute, the appellate court indicated that Petitioner was convicted of two or more felonies as he was convicted of four felonious assault charges, and he was found guilty of firearm specifications under ORC § 2929.14(B)(1)(a). ECF Dkt. #10-1 at 104.  Thus, the Ohio appellate court reasoned, the trial court was required to impose prison terms on Petitioner for the two most serious firearm specifications and could, in addition and in its own discretion, impose a sentence for any other specifications.  *Id*.[state law citations omitted].  The Ohio appellate court found that the trial court imposed two three-year firearm specifications attached

to the felonious assault convictions as required by section 2929.14(B)(1)(g), and imposed a five-year mandatory term of imprisonment required under ORC § 2941.146 for discharging a firearm from a motor vehicle. *Id.* The appellate court noted that while the trial court could have merged the three-year and five-year firearm specifications as to one of the felonious assault convictions, Ohio caselaw requires a court to impose a sentence for a  specification under ORC § 2941.146 for discharging a firearm from a motor vehicle, and a sentence under ORC § 2941.145 for displaying, brandishing or indicating that a defendant possesses a firearm. *Id.* The appellate court noted that the trial court only imposed a single five-year mandatory prison term under ORC §2941.146 despite the other specifications attached to the other counts which was proper because ORC § 2929.14(B)(1)(c) mandated the merger of the five-year firearm specifications in the other counts "for felonies committed as part of the same act or transaction." ECF Dkt. #10-1 at 106, quoting ORC § 2929.14(B)(1)(c).

For similar reasons, the undersigned recommends that the Court find that Petitioner's third ground for relief is noncognizable in federal habeas corpus review.  Petitioner cites to Ohio law in alleging that the trial court's written journal entry was ambiguous in sentencing him to a consecutive term and in stating whether a six-year or fourteen-year prison term applied and therefore under Ohio law the ambiguity is construed in his favor and he is entitled to the six-year term. ECF Dkt. #1-1 at 18-19.  This ground for relief implicates solely Ohio law and the interpretation of the Ohio sentencing statutes and caselaw.  It is therefore not cognizable in federal habeas corpus review.

However, even reviewing the Ohio appellate court's determination on this issue, the undersigned recommends that the Court find no merit to Petitioner's assertion.  The appellate court found that the trial court's journal entry was consistent with what the trial judge stated at sentencing. ECF Dkt. #10-1 at 108.  The appellate court explained that Petitioner's fourteen year sentence was based on a sentence of three years for count one felonious assault with two years on weapons under disability and five months for criminal damaging, all which the trial court ordered to be served concurrently. *Id.* The appellate court continued that the trial court imposed a total of eleven years on the firearm specifications, all to be served consecutively to the underlying base count of three years. *Id.*

-30-

The undersigned recommends that the Court find no merit to Petitioner's assertion of an ambiguous journal entry and a journal entry inconsistent with the sentence imposed at the sentencing hearing. At the sentencing hearing, the trial court indicated that the improper discharging of a firearm into a habitation was going to merge with the count one felonious assault. ECF Dkt. #10-3 at 229. In its journal entry, the trial court indicated the same. ECF Dkt. #10-1 at 33. At the hearing, the trial court sentenced Petitioner to three years on each of the felonious assault counts and ran them concurrent to each other, thus resulting in one three-year term of imprisonment. ECF Dkt. #10-3 at 246-247. The court's journal entry indicated the same. ECF Dkt. #10-1 at 33. The trial court indicated at the hearing that Petitioner was convicted of one and three-year firearm specifications which merged into a three-year firearm specification as to each felonious assault count. ECF Dkt. #10-3 at 246. The court explained that each of those firearm specifications were concurrent, except that ORC §2929.14(B)(1)(g) specified that if a defendant is convicted of certain crimes, including felonious assault, as in this case, the court must impose two of the most serious gun specifications, which were two the three-year firearm specifications. *Id*. Thus, the court indicated that it sentenced Petitioner to the three years on the felonious assault, plus two three-year firearm specifications which were mandatory and which were consecutive to each other and to the three-year term for the felonious assault conviction. *Id.* at 246-247. The trial court indicated the same in its journal entry finding that the sentences for the felonious assault counts ran concurrently to one another, and that ORC 2929.14(B)(1)(g) required the imposition of two of the most serious firearm specifications, which were two of the three-year firearm specification, which would run consecutive to the three-year sentence on the felonious assault count. *Id*. at 33. Finally, the trial court articulated at the hearing that while Petitioner had five-year gun specifications attached to each felonious assault count, only one five-year gun specification term could be imposed under ORC 2929.14(B)(1)(c). ECF Dkt. #10-3 at 246. In its journal entry, the trial court indicated the same. ECF Dkt. #10-1 at 33. Moreover, at the sentencing hearing and in its journal entry, the trial court summed up the sentencing determination specifically stated that Petitioner's sentence was for a total of fourteen years. ECF Dkt. #10-1 at 33; ECF Dkt. #10-3 at 247. Accordingly, the undersigned recommends that the Court find that no ambiguity existed in the trial court's journal entry and no

inconsistency existed between the sentence articulated at the sentencing hearing and the sentence imposed in the journal entry, as found by the Ohio appellate court.

In his fourth ground for relief, Petitioner alleges that his conviction is against the manifest weight of the evidence. ECF Dkt. #1-1 at 19-22. However, a claim that a conviction is against the manifest weight of the evidence is not cognizable in federal habeas corpus review. *Chisholm v. Turner*, No. 5:13CV976, 2014 WL 3349591, at *4-*5 (N.D. Ohio July 8, 2014). It is not cognizable before this Court because "[a] 'manifest weight of evidence' claim which is based on a state law concept that 'is both quantitatively and qualitatively different' from a constitutional due process sufficiency of evidence standard, raises an issue of state law only." *Ladd v. Tibbals,* No. 5:11-cv-173, 2012 WL 5364242, at *7 (N.D. Ohio, Sept. 11, 2012), unpublished, Report and Recommendation adopted by 2012 WL 5364406 (N.D. Ohio, Oct. 30, 2012); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1998)). Manifest weight claims are derived from purely state law whereby the state appellate court sits as a "thirteenth juror and disagrees with fact finder's resolution of conflicting testimony" and finds that the "jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Tibbs v. Florida*, 457 U.S. 31, 41-47 (1982); *State v. Thompkins*, 78 Ohio St.3d 380, 389, 678 N.E.2d 541, 546-548 (1997)(superseded by state constitutional amendment on other grounds, *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997), cert. denied 523 U.S. 1125 (1998)), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

Accordingly, the undersigned recommends that the Court decline to review Petitioner's fourth ground for relief because it lacks cognizability.

### C.    Ground Five - Sufficiency of the Evidence

Petitioner asserts in his fifth ground for relief that insufficient evidence was presented in order to convict him. ECF Dkt. #1-1 at 22. However, Petitioner fails to elaborate how the evidence was insufficient to convict him and fails to identify the counts upon which he believes insufficient evidence was presented. The Court could reject Petitioner's fifth ground for relief on the basis that he failed to properly identify, explain and support an insufficiency of the evidence claim.

-32-

Nevertheless, the due process clause of the Fourteenth Amendment requires that a criminal conviction be based upon proof beyond a reasonable doubt as to every fact necessary to constitute the offense charged. *In re Winship*, 397 U.S. 358, 363-64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The standard for determining sufficiency of the evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In reaching its determination as to the sufficiency of the evidence, a court may not substitute its determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses. *See id.*; *see also Walker v. Engle*, 703 F.2d 959, 970 (6th Cir.1983).

To determine whether the state court unreasonably applied the sufficiency-of-the-evidence standard of *Jackson v. Virginia*, * * * "[f]irst, [the Court] must ask whether the evidence itself was sufficient to convict.... [and] [t]he inquiry ends if [the Court] determines that there was sufficient evidence." *Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir.2010) (citation omitted). Second, "[i]f [the Court] find[s] that the evidence is insufficient to convict, [the Court] must then apply AEDPA deference and ask whether the state court was 'objectively unreasonable' in concluding that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt." *Id.* (citation omitted).

The result of this double deference is that "habeas corpus relief is appropriate based on insufficient evidence only where we find, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir.2007). On habeas review, federal courts must assume that the jury "resolve[d] conflicts in the testimony," "weigh[ed] the evidence," and drew "reasonable inferences" therefrom. *Jackson*, *supra*, at 319. A court should interfere with a jury verdict only to the extent necessary to guarantee the fundamental protections of due process of law.

In addressing his sufficiency of the evidence claim, the Ohio appellate court referred to the evidence that it cited to in finding that Petitioner's conviction was not against the manifest weight

-33-

of the evidence. ECF Dkt. #10-1 at 110. In determining that Petitioner's conviction was not against the manifest weight of the evidence, the Eighth District cited to *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), which quoted *Tibbs v. Florida*, 457 U.S. 31, 45, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Both *Thompkins* and *Tibbs* cite to the sufficiency of the evidence standard in *Jackson*. *Thompkins*, 678 N.E.2d at 546, *Tibbs*, 457 U.S. at 2220.

While a sufficiency of the evidence claim is different from a manifest weight of the evidence claim, *see Tibbs*, 457 U.S. 45, *Thompkins*, 78 Ohio St.3d at 386–387, courts have held that, "[w]en a state appellate court determines that a conviction is not against the manifest weight of the evidence, that necessarily includes a determination that the evidence is sufficient to support the conviction." *Herrington v. Lazaroff*, No. 5:12CV1005, 2015 WL 3687681, at *37 (N.D. Ohio June 11, 2015, quoting *Glenn v. Bobby*, 2013 WL 3421888, *9 (N.D.Ohio July 8, 2013); *Baldwin v. Berghtler*, 2009 WL 2705922, * 16 (N.D.Ohio Aug.26, 2009) (quoting *State v. Lee*, 158 Ohio App.3d 129, 814 N.E.2d 112 (2004)) ("because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency"); *Thomas v. Bobby*, 2007 WL 295456, at *2 (N.D.Ohio Jan.29, 2007) (indicating that, "a court's finding that a conviction is supported by the manifest weight of the evidence necessarily means that the court has found that the conviction is supported by sufficient evidence.")

Similar to Petitioner's sufficiency of the evidence ground for relief before this Court, Petitioner did not specify how or why he believed his convictions were based upon insufficient evidence in his appeal to the Eighth District Court of Appeals. ECF Dkt. #10-1 at 60-61. However, in his manifest weight of the evidence assignment of error before the Ohio appellate court, Petitioner challenged Ms. Hearn's testimony, arguing that her view of the shooter was obstructed, she lied about the level of lighting and visibility on the night of the shooting, and she testified that she saw a rifle sticking out of the car when initial police reports indicated that a handgun was used. *Id.* at 59-60. Petitioner also asserted that no physical evidence was presented in order to support that a shooting occurred from the car. *Id.* at 60.

Since Petitioner does not specify in his federal habeas corpus petition how the evidence was insufficient to support his conviction or why he believes it is insufficient, the only arguments of Petitioner are those made before the Ohio appellate court in Petitioner's appellate brief.  In addressing this claim, the Ohio appellate court found that all of the issues raised by Petitioner were presented at trial and considered by the jury.  ECF Dkt. #10-1 at 109.  The Eighth District appellate court further found that none of the assertions presented by Petitioner were so great on their own or in conjunction with one another to render Ms. Hearn's testimony completely unreliable.  *Id*.  The court pointed out that Ms. Hearn's knew Petitioner and one of the detectives on the scene testified that there was a clear visual vantage point form the porch and the street.  *Id*. at 110.  The appellate court further held that the prosecution presented "significant circumstantial evidence tying" Petitioner to the crimes as Petitioner's own admission and his brother's testimony placed Petitioner at the scene and both of them established that he was driving the same car that Ms. Hearn had identified.  *Id*.

The record shows that Ms. Hearn testified that she knew who Petitioner was as he used to date Leigh Clark, the aunt of her boyfriend Wilson Clark.  ECF Dkt. #10-2 at 201-202.  She testified that she saw Petitioner on the night of the shooting as she was with Mr. Clark, Ms. Clark, and two children hanging out on the porch of the house where Mr. Clark was staying when Petitioner pulled into the driveway in a silver Mazda and told Leigh Clark to come down, but she refused.  *Id.* at 203.  Ms. Hearn testified that Petitioner then asked Mr. Clark if he could talk to Ms. Clark and Mr. Clark told Petitioner that she did not want to be bothered with him.  *Id.* Ms. Hearn testified that Petitioner then drove away.  *Id*. at 204.  She testified that Petitioner returned ten minutes later and again stated that he wanted to talk to Ms. Clark and Mr. Clark again told him to leave and not to return because she did not want to be bothered.  *Id*. at 205.  Ms. Hearn testified that she then saw Petitioner push Mr. Clark in the driveway and Mr. Clark pushed him back and they then started to fight in the middle of the street.  *Id*. at 205-206.  She indicated that Mr. Clark knocked Petitioner out and he fell and "got his head busted open."  *Id*. at 206.  She testified that Petitioner got up, stood there for a minute, got into his car, and sped away wildly.  *Id*.

-35-

Ms. Hearn testified that less than ten minutes after that, she saw the silver Mazda pull up and saw a rifle sticking out of the driver's window of the car and they ran to the inside of the house and barely made it into the foyer of the house and dropped onto the floor when gunshots were fired. ECF Dkt. #10-2 at 206-207.  She testified that she saw Petitioner driving the silver Mazda when he was pointing the gun at them.  *Id.* at 207.  Ms. Hearn further stated that she was able to see Petitioner's face in the car with the gun pointing out even though it was dark because it was not completely dark outside and there were streetlights.  ECF Dkt. #10-2 at 215-216.  She also indicated on cross-examination that while there were bushes in front of the house, the photograph presented to her showing the bushes was taken in complete darkness which made it look like an individual could not see through the bushes, but it was not completely dark on the night of the shooting and she could see through the bushes because it was not completely dark. *Id*. at 230.  She also indicated that she was standing up when the shooting occurred so the bushes did not impede her view.  *Id*. at 234.

Mr. Clark testified that he was staying at his grandfather's house on the night of the incident when Petitioner drove up in a silver Mazda and wanted Ms. Clark to talk to him, but Ms. Clark did not want to talk to him.  ECF Dkt. #10-3 at 12.  He stated that he went to the bottom of the driveway and told Petitioner to leave because Ms. Clark did not want to talk to him and when he told him that, Petitioner told him that he was going to put Mr. Clark back in the hospital.  *Id*. at 11, 13.  Mr. Clark explained that he had been shot in 2010 and had a neck brace because two of his cervical vertebrae were fractured.  *Id*. at 11-13.  Mr. Clark testified that the conversation got heated and the two men were close enough to touch one another, but they did not fight or even touch each other and he did not know that blood was in the street until the police came to his house afterward.  *Id*. at 16.  He testified that during the heated exchange, his uncle was with him and got between he and Petitioner when the situation escalated.  *Id*.  He indicated that he then left and he thought Petitioner drove away.  *Id*.  He testified that he was not there when the shooting occurred but came back when Ms. Clark called and told him about the incident.  *Id*.

Mr. Clark further testified that the day after the shooting, Petitioner's brother came over and apologized, stating that he was sorry for what his brother had done.  ECF Dkt. #10-3 at 19.  He also

testified that the bushes were not an obstruction of a view to the street because you can see through the bushes. *Id*. at 29. He further testified that a streetlight was located across the street from the house. *Id*.

Mr. Cannon, Petitioner's brother, also testified. ECF Dkt. #10-3 at 84. He testified that he and others were out on their porch on the night of the incident and their house was down the street from where the incident occurred. *Id*. He indicated that they heard a commotion and walked down to see what was going on when they saw Petitioner lying in the street. *Id.* at 87-88. He stated that he and Petitioner had been drinking earlier that evening. *Id*. at 88. He testified that when he got there, he and others picked his brother up off the street and asked Mr. Clark what happened and Mr. Clark stated that Petitioner was drunk and that he tripped over the curb and fell, hitting his head. *Id*. at 90. Mr. Cannon indicated that Petitioner was driving their uncle's car, a gray Mazda. *Id*. He indicated that once they picked Petitioner up, he was "okay" and drove the car back down the street to their brother's house which was right next to their house on the same street. *Id*. He testified that he then went into the house for a minute, and when he went back outside, Petitioner was gone. *Id*. at 92. He then heard shots being fired and after seeing the police go to Mr. Clark's house, he and the others went to Mr. Clark's house and as he approached, he heard Mr. Clark say to the police officer, "there's his brother." *Id*. at 93.

The prosecutor then asked Mr. Cannon why he told police when they questioned him about the shooting that Petitioner had to do what he had to do. ECF Dkt. #10-3 at 95. Mr. Cannon testified that the officer twisted his words and the next time that he saw his brother was in Detroit at a funeral for a relative. *Id*. He indicated that he told Petitioner that the police wanted to question him and Petitioner said that he was going to return to Ohio to answer their questions, but he never did so. *Id*.

Detective Delisle of the Cleveland Police Department testified that he followed up at the Clark house after the incident and he observed that he could see directly onto the porch of that house from the street. ECF Dkt. #10-3 at 106. He indicated that the police department could not locate Petitioner, so they obtained a warrant and he interviewed Petitioner. *Id*. at 108. He testified that originally, Petitioner agreed to give him a DNA swab. *Id*. However, he then told Detective Delisle

that one was not necessary after Detective Delisle told him that blood was found at the scene and people had identified him as being at the scene. *Id*.

The undersigned recommends that the Court find that the Ohio appellate court applied the proper constitutional standard and did not commit error in its determination. To the extent that Petitioner is asserting challenges to Ms. Hearn's credibility, a federal habeas court does not reweigh the evidence or redetermine the credibility of the witnesses. *Herrington,* 2015 WL 3687681, at *6. The Court is to determine whether the jury made a rational decision to convict. Id. The evidence and testimony presented placed Petitioner at the scene, in a fight with someone at the Clark house, in the silver Mazda, and one witness who knew Petitioner identified him as the shooter. As for Petitioner's assertion that there was no physical evidence establishing that he was the shooter, such evidence is not necessary. *See State v. Apanovitch*, 33 Ohio St.3d 19, 514 N.E.2d 394, 402-403 (1987)("In fact, a conviction based upon purely circumstantial evidence may be just as reliable as a conviction based on direct evidence, if not more so. *Michalic v. Cleveland Tankers, Inc*. (1960), 364 U.S. 325, 330, 81 S.Ct. 6, 10–11, 5 L.Ed.2d 20. See, also, *Rogers v. Missouri Pacific RR. Co*. (1957), 352 U.S. 500, 508, at fn. 17, 77 S.Ct. 443, 449, at fn. 17, 1 L.Ed.2d 493; *The Robert Edwards* (1821), 19 U.S. (6 Wheat.) 187, 190, 5 L.Ed. 238)").

For these reasons, the undersigned recommends that the Court find no merit to Petitioner's fifth ground for relief.

### D. Ground Six - Prosecutorial Misconduct

In his last ground for relief, Petitioner asserts that the prosecution committed misconduct by attacking the sincerity of his defense counsel at trial. ECF Dkt. #1-1 at 22-24. Petitioner points to the prosecution's rebuttal argument in his closing statement in which the assistant prosecutor stated that his counsel "was doing what a defense attorney does." *Id*. at 24, quoting ECF Dkt. #10-3 at 161. He contends that this statement implied that his counsel did not believe in his case but had to defend it because it was his job. ECF Dkt. #1-1 at 24. Petitioner asserts that this statement prejudiced the jury. *Id*.

The United States Supreme Court has made clear that the determination of a federal habeas corpus claim of prosecutorial misconduct claim is not based upon Sixth Circuit precedent, but is

based upon United States Supreme Court precedent and the Court must determine whether "the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process," or whether it was "so egregious as to render the entire trial fundamentally unfair." *Bales v. Bell*, 788 F.3d 568,  578 (6th Cir. 2015), quoting *Parker v. Matthews*, – U.S. – , 132 S.Ct. 2148, 2153, 2155, 183 L.Ed.2d 32 (2012)(per curiam)(finding that the Sixth Circuit erred by consulting its own precedents as to two-step inquiry in determining the reasonableness of the state court's opinion as to prosecutorial misconduct); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986); *Wogenstahl v. Mitchell*, 668 F.3d 307, 327–328 (6th Cir.2012); *Bates v. Bell*, 402 F.3d 635, 640–41 (6th Cir.2005); *Kincade v. Sparkman*, 175 F.3d 444 (6th Cir.1999); *Cook v. Bordenkircher*, 602 F.2d 117 (6th Cir.1979).

The Eighth District Court of Appeals in the instant case provided the following analysis of Petitioner's assignment of error predicated upon the prosecutor's comments regarding Petitioner's absence during his closing argument on direct appeal:

> Sheffey argues that the prosecutor's closing statement prejudiced him because it unfairly attacked his defense counsel's theory that Hearn did not have the opportunity to see the shooter and implied that his defense counsel did not even believe him and was merely doing a "job."  Specifically, Sheffey points of the following excerpt:

> All right.  So it's really unreasonable to expect her to come in here and say well, the barrel was this long, the handle was brown in color or chrome in color.  That's unreasonable.  And Mr. Seewald's doing what a criminal defense attorney does; [sic] he's going to raise that as reasonable doubt.  That's not anywhere near reasonable doubt, and I hope and think you will see through that.

ECF Dkt. #10-1 at 111-112, citing ECF Dkt. #10-3 at 161.  The Ohio appellate court went on:

> Although prosecutors are entitled to considerable latitude in opening and closing statements, they must nevertheless avoid insinuations and assertions calculated to mislead.  *Lott* at 166.  "They may not express their personal beliefs or opinions regarding the guilt of the accused and they may not allude to matters not supported by admissible evidence."  *Id*.  The prosecutor is, however, permitted to fairly comment on the credibility of witnesses based on the witnesses' testimony at trial.  *State v. Williams*, 8th Dist. No. 90739, 2012-Ohio-1741, ¶ 12, citing *State v. Price*, 60 Ohio St.2d 136, 140, 398 N.E.2d 772 (1979).  Courts must review the statement within the context of the entire trial.

> We cannot agree that the prosecutor's comments rise to prosecutorial misconduct.  Indeed, a prosecutor's comments should not be taken out of context and given their most damaging meaning.  *State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068

> (1996).  Notably, Sheffey's defense counsel did not object to these comments.  But even if these comments were construed as inappropriate, we cannot say that it denied Sheffey of a fair trial.  Here, the trial court specifically instructed the jury that opening statements and closing arguments of counsel were not evidence, and that the jury was to decide the case solely on the evidence presented.  We have no basis to conclude that the jury did not follow this instruction.

ECF Dkt. #10-1 at 112-113.

It is improper for a prosecutor to make personal or inflammatory attacks on a defendant or defense counsel, to question defense counsel's veracity, or to denigrate defense counsel, *United States v. Young*, 470 U.S. 1, 8-9, 105 S.Ct. 1038, 44 L.Ed.2d 1 (1985).  The undersigned finds that the prosecutor's comment in the instant case did not constitute such an attack or denigration.  However, even if the Court should find that the single statement by the prosecutor was an improper attack on defense counsel, it did not so infect the trial with unfairness as to deprive Petitioner of due process.  A review of the record does not support a finding that the jury's consideration of the evidence was impacted by the prosecutor' comment and, as pointed out by the Ohio appellate court, the trial court specifically instructed the jury that opening and closing statements of counsel were not evidence and the jury was required to consider the case solely upon the evidence presented.  ECF Dkt. #10-1 at 112-113; ECF Dkt. #10-3 at 141, 168.  Accordingly, the undersigned recommends that the Court find no merit to Petitioner's sixth ground for relief.

**VII.  CONCLUSION AND RECOMMENDATION**

For the foregoing reasons, the undersigned recommends that the Court DISMISS the instant petition in its entirety with prejudice.


DATE: September 30, 2015                 */s/ George J. Limbert*

                                         GEORGE J. LIMBERT
                                         UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).